UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**   ORDER IMPOSING SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11 AND THE COURT'S INHERENT POWER TO SANCTION ABUSE OF THE JUDICIAL PROCESS.

On April 16, 2021, the Court issued an order to show cause why sanctions should not be imposed against Plaintiff's counsel Joseph Richard Manning, Jr. ("Manning" or "JRM").[1]  Dkt. 19.  The Court explained that, while reviewing Plaintiff's application for default judgment in the above-captioned case, the Court discovered that Manning had submitted nearly identical billing statements in 85 cases.[2]  *See generally id.*  The Court expressed its concern that, in those cases, Manning's billing statements and sworn declarations may be false.  *See id.* at 5–6.  The Court ordered Manning to respond and explain the pattern identified by the Court.  *See id.* at 6.  After the Court granted Manning an extension of time to respond, Dkt. 21, Manning filed his response on May 10, 2021, Dkt. 22.

The Court has reviewed Manning's response, as well as the supporting declarations and exhibits.  In light of that review, the Court concludes that sanctions are warranted.

---

[1] The Court hereby incorporates its prior order and the findings therein by reference.  *See* Dkt. 19.

[2] On the fifth page of its prior order, the Court wrote that the "6 statements for $4,575 are identical to the 18 statements for $4,644 . . . The only difference between the statements for $4,575 and the statements for $4,644 is [the amount of service fees]."  Dkt. 19 at 5.  The number "18" was a typo; there were 25 statements for $4,644, not 18.  *See id.* at 9 (Appendix II of 25 cases in which Manning billed $4,644).

_____ : _____
Initials of Preparer
PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

**I.     Authority for Sanctions.**

As noted in the Court's prior order, Federal Rule of Civil Procedure 11 authorizes the Court to "impose an appropriate sanction" for signing and filing a document whose factual contentions lack evidentiary support. *See* Fed. R. Civ. P. 11(b)(3). "If [Rule 11] sanctions are warranted by [the] circumstances, the court should not waiver in imposing them." *Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir. 1986), opinion amended on denial of reh'g sub nom. *In re Yagman*, 803 F.2d 1085 (9th Cir. 1986). The primary purpose of Rule 11 sanctions is to deter subsequent abuses. *Id.* In determining the amount or type of sanctions necessary to deter subsequent abuses, the Court considers:

Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amendments), Subdivisions (b) and (c); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1126 n.4 (9th Cir. 2002) (citing to the advisory committee notes of the 1993 Amendments).

Separately from the authority to impose sanctions under Rule 11, federal courts have "inherent powers" to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citations omitted). "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).

Finally, courts have the authority to refer individuals to the United States Attorney for potential prosecution as that official deems appropriate. *See, e.g., Neal v. LaRiva*, 765 F.3d 788, 791 (7th Cir. 2014) ("[W]e order the Clerk of this court to send copies of this opinion and the case file to the United

|  | : |
|---|---|
| Initials of Preparer | |
| | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

States Attorney for the Southern District of Indiana, so that he may consider the question whether Neal should be prosecuted for the crime of perjury, 18 U.S.C. § 1621, or any other offense that he deems appropriate."); *Ades v. 57th St. Laser Cosmetica, LLC*, 2013 WL 2449185, at *13 (S.D.N.Y. June 6, 2013) ("[T]he Court finds that it is appropriate to refer Nesbitt's conduct to the United States Attorney's Office for investigation and, if appropriate, prosecution for perjury.").

**II.     Manning's Conduct Warrants Sanctions.**

The Court reviewed Manning's response and the materials attached in support of that response. *See* Dkt. 22.   Having done so, the Court finds that sanctions are warranted.

To begin, Manning admits what the Court suspected about his billing statements: they are carbon-copy templates that are used repeatedly in support of applications for default judgments. Manning states as follows: "The Court's primary concern is that many of Manning Law's billing statements appear identical, both in terms of tasks performed and amounts charged.   This is a result of *standardization of case handling procedures* adopted by the firm and a policy of *billing a standard amount*, which has always been a lesser amount of time, even if more hours were expended."   *See id.* at 3 (emphasis added).

In essence, Manning's response to the order to show cause is that the Court need not be concerned about Manning's billing practices because, even though he uses carbon-copy billing statements, he never overbills; if anything, he underbills.

This response is undermined by two fundamental problems.   First, Manning identifies no authority whatsoever that permits carbon-copy billing statements.   To the contrary, a fee applicant "bears the burden of establishing entitlement to an award and *documenting the appropriate hours expended* and hourly rates."   *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (emphasis added).   This burden is imposed on fee applicants because requests for attorney's fees are not intended to be rubber-stamped.   Rather, a court must conduct an independent review to determine "the reasonableness of the hours claimed by the prevailing party."   *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992). Moreover, to allow meaningful appellate review, a court must articulate "the reasons for its findings regarding the propriety of the hours claimed or for any adjustments it makes either to the prevailing

: 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

party's claimed hours or to the lodestar."[3]   *Id.*

Those two tasks—judicial review of the reasonableness of the requested fee, and judicial findings and explanations regarding any adjustments to that fee—cannot be accomplished if the billing statements presented to a court are mere templates rather than specific recordings of time spent on the case.   This is particularly true where, as is the case here, no opposition is filed that could assist the Court in evaluating the reasonableness of the fee request.

Indeed, courts routinely decline to award attorney's fees based on estimates of time spent on the case.   *See, e.g., Deane v. Pac. Fin. Grp. Inc. et al*, 2021 WL 1244810, at *1 (W.D. Wash. Mar. 26, 2021) (reducing fee award because counsel "relie[d] on an estimate of time spent opposing one motion, rather than actual billing records that he could have submitted"); *Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 154522, at *8 (N.D. Cal. Jan. 12, 2015) (rejecting counsel's "use of estimates to substantiate its claimed attorneys' fees" as "inconsistent with the requirement that such fees be 'itemize[d] with particularity'"); *J & J Sports Prods., Inc. v. Thang*, 2020 WL 2992319, at *2 (E.D. Cal. June 4, 2020) ("[T]he Court is not impressed with Plaintiff's counsel's approach of submitting estimated reconstructions of fees in lieu of actual billing records.").[4]

Of course, Manning did not merely estimate time here.   Rather, he billed an amount that was nearly identical to the amounts billed in 84 other cases, and he submitted a sworn declaration stating that the billing statement accurately reflected the time spent in this case.   The only differences across the 85 cases are (1) the name of the case and dates for tasks; (2) an additional time entry in 31 of the cases for responding to an order to show cause regarding supplemental jurisdiction; and (3) lower service fees in 6

---

[3]   Indeed, this Court reviews billing statements closely to ensure that the hours expended and billed for were appropriate and that the requested fee is reasonable.   *See, e.g., Chris Langer v. Westco Investment LLC et al*, No. 2:19-cv-02439-SVW-SK, Dkt. 64; *Whitaker v. Beverly Falafel, Inc. et al*, No. 2:19-cv-10127-SVW-GJS, Dkt. 42; *Whitaker v. Mateos Ice Cream and Fruits Bars, Inc.*, No. 2:20-cv-09681-SVW-RAO. Dkt. 20; *Orlando Garcia v. Maura Calixto Velazquez*, No. 2:20-cv-10817-SVW-RAO, Dkt. 20; *Raul Uriarte-Limon v. Albert Castro et al*, No. 2:19-cv-04691-SVW-SS, Dkt. 51; *Alvarez v. F&K Atlantic Properties, LLC et al*, No. 2:19-cv-07452-SVW-RAO, Dkt. 43.

[4]   In these cases, when requesting their fee, the lawyers acknowledged that they relied on estimates.   Here, by contrast, had the Court not issued its order to show cause, it would have never known that Manning's fee request in the instant case was the result of a "standardization of case handling procedures" and a "policy of billing a standard amount."   See Dkt. 22 at 3.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

of the cases. Everything else on the 85 billing statements—the language used to describe the tasks (including specific typos), the amount of time spent (to the tenth of an hour), and the attorney assigned to the task ("JRM" or "AA")—is *exactly* the same. Under these circumstances—and particularly in light of Manning's statement that the firm has a policy of "billing a standard amount"—the Court concludes that Manning did not actually track or accurately record the time spent in this case, and his submission to the Court under oath was misleading and not truthful.

Second, the Court rejects Manning's claim that he never overbills and only understates the amount of time spent on a particular case. That claim is irrelevant because, even if carbon-copy billing statements do not represent overbilling, they still prevent courts from doing their job and properly assessing the reasonableness of the requested fee. In essence, Manning believes he can be the sole arbiter of what a reasonable fee is for ADA default judgment cases, and courts need not be concerned whether the billing statements are actually "true and correct," as Manning swears they are in his declarations. That belief is incorrect for the reasons discussed above. *See supra* at 3–4.

Moreover, Manning's claim that he never overbills and only understates the time spent on a particular task is contradicted by the pattern identified by the Court and by Manning's own admissions in his response. Manning expressly acknowledges that "in many cases the tasks and time required to complete them will vary." *Id.* at 5. Indeed, Manning identifies 9 cases where he billed less time than the 85 identical billing statements. *See Perri v. D&R Restaurant*, No. 2:19-cv-08032-PA-MAA, Dkt. 28-7 (default judgment application requesting $4,213); *Rutherford v. BBR Banker*, No. 8:20-cv-00250-DOC-KES, Dkt. 17-8 (default judgment application requesting $4,022); *Bouyer v. Lucky 7*, No. 2:20-cv-00631-GW-JPR, Dkt. 12-7 (default judgment application requesting $3,782); *Bouyer v. Curtis Wilson Cost*, No. 2:20-cv-01241-DSF-AS, Dkt. 15-7 (default judgment application requesting $3,688); *Perri v. YB Invest*, No. 2:20-cv-02821-MWF, Dkt. 16-7 (default judgment application requesting $3,932); *Bouyer v. Kadima*, No. 2:20-cv-04709-RSWL-KS, Dkt. 17-7 (default judgment application requesting $3,857); *Bouyer v. D Egidio*, No. 2:20-cv-04621-RSWL-JEM, Dkt. 14-7 (default judgment application requesting $3,591); *Rutherford v. Ibrahim Diab*, No. 5:20-cv-00635-JAK-MAA, Dkt. 19-7 (default judgment application requesting $3,366); *Bouyer v. Sylmar Plaza*, No. 2:20-cv-06708-RGK-E, Dkt. 16-8 (default judgment application requesting $4,153).

:

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

    Yet, in each of these 9 cases, Manning and the "Associate Attorney" ("AA") conducted the exact same tasks, respectively, that they did in the 85 cases with nearly identical billing statements. Specifically, they each conducted the following tasks in the following order:

- Reviewed information received from client (JRM)

- Met with client and discussed case. (JRM)

- Examined the alleged violations of the ADA Access Guidelines at the property and confirmed they are not ADA compliant as set forth in the Complaint. (JRM)

- Conducted research of public records to determine identities of business owner and owner of the real property (AA)

- Edit/draft complaint for filing. (JRM)

- Reviewed and executed the front matter (civil case coversheet, summons, etc.). (AA)

- Reviewed court-issued summons, Notice of Assignment, Standing order. (AA)

- Reviewed and executed the Request for Entry of Default; review file generally to confirm service proper and effected as to proper defendant. (AA)

- Drafted delcaration [*sic*] on behalf of client in support of Plaintiff's Application for Entry of Default Judgment. Contacted client to execute declaration. (AA)

- Drafted Notice of Motion and Motion for Application for Entry of Default Judgment, and declaration in support. Compiled exhibits and instructed staff to file. (AA)

- Review Default Package and Approve (JRM)

                                                                           :
Initials of Preparer      PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

The only difference between the 9 cases identified in Manning's response and the 85 cases with nearly identical billing statements is the time spent on each of the above tasks; the tasks themselves are exactly the same.[5]  In other words, these 9 cases establish that the tasks conducted in the 85 cases with nearly identical billing statements often take less time than reflected in the 85 nearly identical billing statements.  Yet, in those 85 billing statements, JRM and AA spent the exact same amount of time—to the tenth of an hour—on every task.  Under these circumstances, the Court concludes that the 85 nearly identical billing statements do not accurately reflect the time spent on those cases.

     Manning argues that his use of carbon-copy billing statements is "intended to simplify the default judgment process for the benefit of judges in the Central District, who have presided over thousands of ADA cases and have specifically ordered ADA plaintiff firms to streamline the process." Dkt. 22 at 2.  This argument is frivolous.  In support of this claim, Manning identifies two scheduling orders issued by judges in this district.  *See* Dkt. 22-6, Ex. F.  Yet, those orders say nothing about attorney's fees at all, let alone "billing a standard amount."  Rather, they simply impose deadlines for plaintiffs to file proofs of service, requests for default, and motions for default judgment.  *See id.*  It is simply impossible to interpret those orders as authorizing Manning's billing practices.

     Remarkably, Manning has the temerity to double down in a sworn declaration attached to his response.  Despite his indefensible conduct, Manning states as follows: "I have reviewed my Declarations and accompanying billing statements referenced by this Court in the OSC, and I confirm that my declarations and the billing statements are true and correct."  *See* Dkt. 22-1 ¶ 9.  Manning makes that assertion despite admitting that his billing statements in the 85 cases are carbon-copy templates, *see supra* at 3, and despite the evidence discussed above that led the Court to conclude that the 85 billing statements are not accurate, *see supra* at 5–7.  Under these circumstances, the Court finds that Manning's sworn statements in his declaration submitted in support of his response to the order to show cause are false.

                                                \* \* \*

---

[5] The hourly rate for JRM ($450) and AA ($375) in each of these 9 cases is the same as in the 85 cases with nearly identical billing statements.

                                                                                                                               :

Initials of Preparer

                                                             PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

As noted above, *see supra* at 2–3, federal courts have "inherent powers" to "fashion an appropriate sanction for conduct which abuses the judicial process." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citations omitted). Federal Rule of Civil Procedure 11 also authorizes the Court to "impose an appropriate sanction" for signing and filing a document whose factual contentions lack evidentiary support. *See* Fed. R. Civ. P. 11(b)(3).

Pursuant to those two sources, the Court finds that sanctions are warranted. First, Rule 11 warrants sanctions. Manning submitted a sworn declaration in the instant case in which he stated as follows: "I spent a total of 3.25 hours of time at $450/hour and my associate attorneys spent 6.05 hours at $375/hour, which totals $3,731 in attorney fees . . . . The true and correct copy of the billing statement for this matter is attached as Exhibit 5." Dkt. 17-3.

The Court finds that this assertion was misleading and not truthful. Manning himself admits that the statements across the 85 cases—including the instant case—are a result of a "standardized process" and that his firm has a policy of "billing a standard amount." *See supra* at 3. Additionally, the circumstantial evidence discussed above raises the strong inference that the exact same amount of $4,269—and the exact same hours identified for each task, to the tenth of an hour—cannot possibly be "true and correct" across 85 cases. *See supra* at 5–7. Under these circumstances, the Court finds that Manning was untruthful when he asserted that the "billing statement for this matter"—which was a carbon-copy template of billing statements in 84 of other matters—was "true and correct." Dkt. 17-3.

Additionally, the Court's analysis of the billing statements in the 85 cases establishes that Manning's conduct is part of "a pattern of activity" rather than "an isolated event." Fed. R. Civ. P. 11, Advisory Comm. Notes (1993 Amendments), Subdivisions (b) and (c) (describing factors to consider in imposing sanctions). Indeed, Manning "engaged in similar conduct in other litigation." *Id.* Specifically, he engaged in this conduct in 84 other cases. These factors weigh in favor of imposing sanctions here.

Second, sanctions are warranted under the Court's inherent powers, as is a referral to the United States Attorney. Manning abused the judicial process—and did so in bad faith—by filing a carbon-copy billing statement in this case that he has filed in 84 other cases. *See Rousseau*, 985 F.3d at 1090 (sanctions pursuant to court's inherent powers for abuse of judicial process require finding of bad faith).

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

And, despite admitting to the uniform nature of the templates, Manning insists that the billing statement in the instant case and in each of the 84 other cases are all "true and correct."[6]  Dkt. 22-1 ¶ 9.

This conduct constitutes a deception upon the Court that strikes directly at the integrity of the judicial process.  The act of filing carbon-copy billing statements invites courts to unknowingly approve fee awards based on statements that do not reflect the actual time spent on a case.  Manning's conduct deprives courts of their ability to perform their duties and comply with their obligations, as described above.  *See supra* at 3–4.

For the foregoing reasons, the Court finds that sanctions are warranted as follows:

- Manning is ORDERED to pay a fine to the United States District Court for the Central District of California of $2,500.

- The Court will deny the request for attorney's fees affixed to Plaintiff's application for default judgment.

- The Clerk of the Court is ORDERED to send copies of this opinion and all documents in this case, including the Court's prior order, *see* Dkt. 19, to the State Bar of California's Office of Chief Trial Counsel.

- The Clerk of the Court is ORDERED to send copies of this opinion and all documents in this case, including the Court's prior order, *see* Dkt. 19, to the Acting United States Attorney for the Central District of California, so that she may consider the question of whether Manning should be prosecuted for the crime of perjury, 18 U.S.C. § 1621, or any other offense that she deems appropriate.

---

[6] Although the sanctions the Court imposes result from Manning's conduct in the above-captioned case, sanctions are independently warranted—for the same reasons—based on Manning's insistence that the billing statements in the 85 cases identified by the Court are all "true and correct."  Dkt. 22-1 ¶ 9.

| | : | |
|---|---|---|
| | Initials of Preparer | |
| | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:20-cv-11605-SVW | Date | June 3, 2021 |
|---|---|---|---|
| Title | *James Shayler v. Unlimited, Limited Liability Company* | | |

Additionally, the Court is concerned that the associate attorneys who submitted declarations in support of Manning's response were knowing participants in the above-described conduct. Accordingly, those three attorneys—Tristan Jankowski, David Fitzgerald, and Janet Harris—are ORDERED to show cause why sanctions should not be imposed against them for knowingly filing or contributing to inaccurate and misleading billing statements. The responses of the three associate attorneys should be filed on or before June 14, 2021.

**IT IS SO ORDERED.**

:

Initials of Preparer    PMC